Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Danielle S. Yamali (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:      (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff*
*Allstar Marketing Group, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTAR MARKETING GROUP, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>BACKFORTHTRADELTD, BLACKPOWERELECTRIC, BLUESINTERNATIONAL, BYFRI, COMB6RO7G, FRIENDTALK, GAO LI STORE, GDFKGTUY, GIRLS & BOYS, HAWKYTRADE, HIGASHIUME, HIGHERFLY, HOPENHAGEN, HP1ZJMFPD, HYQWA789, JMT34J694, KMI123, KOZEYSDOTCOM, LISEXHQDK, MARINELIFE, MCSOABEREQXVN, MEI11, OGTQ0Q0AE, P99UTIANZHIJIA@163.COM, PERSEVERANCECOLTD, PIAPPLE, PNEUMATIC TOOLS, POSITIVESTYLE, Q2Q2W5, QILUSTORE, SATOTHRKCGB, SEYFYLEETHESRMC, SLALLEAWCAVOK, SMEIGHTVIGBH, SNZDIDE3A, TEAUSHYSMSBBJ, THEETALNWYS, THINK BEST, THODOASTFBQGQ, TITHYSVJID, UNBEATABLESALE.COM, WANGJUANJUANG, WHOULEDVPVFK, WR1YJC1EB, WZ1NYEP51, XANJ6P8HW, XINTANG SHOP, Y LAQDWQD, YOUDI-STORE, YUNXIANGYISHANG, Z10RKETX9, ZHANGWEI1986 and ZHAOYINGHAI33,<br><br>*Defendants* | CIVIL ACTION No.<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY**<br><br>**<u>FILED UNDER SEAL</u>** |

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

**II.    STATEMENT OF RELEVANT FACTS** ................................................ 2

III.    ARGUMENT .............................................................................................. 3

    **A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS** ............................................................................ **3**

        1.    Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1) ............................................................ 3

        2.    Exercising Personal Jurisdiction Over Defendants Comports with Due Process ..................................................... 8

    **B.    PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** .................. **9**

        1.    Plaintiff Will Suffer Irreparable Harm in the Absence of an Injunction Leaving Plaintiff with No Adequate Remedy at Law ............ 11

        2.    Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims ........................................................................ 13

        3.    Plaintiff is Likely to Prevail on Its Copyright Act Claims ...................... 14

            a)    *Plaintiff owns Valid Copyrights in the Baseboard Buddy Works* .................................................. 14

            b)    *Defendants Infringed the Baseboard Buddy Works* ..................... 14

        4.    Plaintiff is Likely to Prevail on Its State Law Claims .............................. 16

        5.    The Balance of Hardships Favors Plaintiff ............................................ 16

        6.    Enjoining Defendants from Using the Baseboard Buddy Works and Baseboard Buddy Mark Will Serve the Public Interest .................... 16

    **C.    PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS** .......................................... **17**

        1.    Defendants' Assets Must be Frozen ...................................................... 17

        2.    Defendants' User Accounts and Merchant Storefronts Must be Frozen .......................................................................... 19

    **D.    PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS** ........................................................................... **22**

**E.     PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY** .................................................................. **24**

**F.     PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE** ............................................. **24**

IV.    CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620
  (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). ................................... 24

*Allstar Marketing Group, LLC v. 123 Beads Store, et al.*, 19-cv-3184-AJN (S.D.N.Y.
  Apr. 10, 2019) ............................................................................................................. 6

*Allstar Marketing Group, LLC v. 178623, et al.*, 19-cv-3186-AJN (S.D.N.Y. Apr. 10,
  2019) ........................................................................................................................... 6

*Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9,
  2019) ........................................................................................................................... 5

*Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y.
  May 9, 2019) ................................................................................................................ 5

*Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-
  4208-KPF (S.D.N.Y. May 9, 2019) ............................................................................... 5

*Allstar Marketing Group, LLC v. bigbigdream320, et al.*, 19-cv-3182-AJN (S.D.N.Y.
  Apr. 10, 2019) ............................................................................................................. 6

*Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y.
  May 9, 2019) ................................................................................................................ 6

*Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) .................................................... 10

*Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 (S.D.N.Y. Jul. 26,
  2012) ........................................................................................................................ 6, 7

*AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y.
  Apr. 1, 2015) .................................................................................................. 1, 19, 22

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) .................................................... 24

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS
  107733 (S.D.N.Y. Oct. 8, 2010) ................................................................................. 17

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ................................................. 3, 4, 9

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ................................................................ 7

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ........................ 16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985).......................................................... 9

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................ 8

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ................................................... 6, 7

*Century Home Entm't, Inc. v. Laser Beat, Inc.,* 859 F. Supp. 636,  638-39 (E.D.N.Y. 1994) ........................................................................................................................ 20

*Chloe v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158 (2d Cir. 2010).............................. 4, 5, 6

*Cisco Tech, Inc. v. Certification Trendz Ltd.*, 2015 U.S. Dist. LEXIS 83127, at *3 (D. Conn. June 26, 2015). ................................................................................. 9, 20, 21

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000).................................... 4

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ........................ 12

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 12, 2015) ............................................................................................. 19, 22, 23

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996) ........................................................ 24

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).................................................... 20

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)............................................................... 12

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008) .................. 3

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB),2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ................................................................. 5, 6, 7

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991) .............................. 14

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) ............... 13

*FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013)..................... 22

*Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)........................................................... 15

*Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 1, 2016) .................................................................................................................... 5

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)......................................................... 18

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ....................................... 4, 19

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015) ........................................................................... 1

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) ..................... 6

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099 (JMF) (S.D.N.Y. Nov. 21, 2017) ............................................... 1

*Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.*, No. 18-cv-901-PGG (S.D.N.Y. Feb. 1, 2018) ............................................... 6

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979)........................................................................ 1

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ......................................................... 3

*JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015).................................... 10

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ............. 1

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist.
LEXIS 153137 (S.D.N.Y. Oct. 24, 2012) ........................................................................ 1

*Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011)........................................................ 14

Lechner v. Marco-Domo Intnationales Interieur GmbH, No. 03 Civ. 5664 (JGK), 2005
U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ............................................................ 8

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013).................................................... 3

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016
U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) .............................................................. 5

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) .......................... 25

*Mattel, Inc. v. Animefunstore, et al.*, 18-cv-8824 (LAP) at p. 10, n. 7 (S.D.N.Y. May 1,
2020) ................................................................................................................................ 7

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ......... 6

*Milliken v. Meyer*, 311 U.S. 457 (1940) ......................................................................... 8

*Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813
(S.D.N.Y. May 9, 2011)........................................................................................... 14

*Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745,2015 U.S. Dist. LEXIS 18801
(E.D.N.Y. Feb. 17, 2015) ........................................................................................ 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ............................................ 23

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) .............. 16

*N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013
U.S. Dist. LEXIS 147835 (E.D.N.Y. Sep. 27, 2013)........................................................ 12

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 17

*National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824
(W.D.N.C. 2008)................................................................................................... 23

*North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226 (S.D.N.Y.
Mar. 30, 2006).............................................................................................. 17, 18

*Nova Prods., Inc. v. KISMA Video, Inc.*, 2002 U.S. Dist. LEXIS 27056, *4 (S.D.N.Y.
July 15, 2002).................................................................................................... 20

*Off-White LLC v. Adagio, et al.*, No. 19-cv-676-RA (S.D.N.Y. Jan. 24, 2019) ........................... 6

*Off-White LLC v. Amazon001, et al.*, No. 19-cv-2067-JMF (S.D.N.Y. Mar. 7, 2019)................... 6

*P&G v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) ................................. 14

*Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492 (2d Cir. 1961) ........................ 13

*Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. Mar. 11, 2011) ................................................................................................ 7

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017)....................................................... 25

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ............................................... 12

*Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)...................................... 10

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480 (S.D.N.Y. Feb. 8, 2009) ................................................................................... 22

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006)................. 3

*Spin Master Ltd., et al v. Alvy, et al.*, No. 19-cv-3452-LGS (S.D.N.Y. Apr. 24, 2019)................ 6

*Stora v. Don't Ask Why Outfitters*, 2016 U.S. Dist. LEXIS 170172, at *12 (E.D.N.Y. Dec. 7, 2016) ................................................................................ 15

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ................... 22, 23

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002)..................... 5

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................ 13

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003) ................................................................................ 16

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515 (S.D.N.Y. 2011); ........... 11

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.*, 03-CV-8909 (RJH), 2003 U.S. Dist. LEXIS 21992, *1-*2 (S.D.N.Y. Dec. 8, 2003)........................................... 20, 21

*Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014)........................................................... 18

*Yurman Design, Inc. v. PAJ Inc.,* 262 F.3d 101 (2d Cir. 2001)................................... 14

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009)..................................... 12

**Statutes**

15 U.S.C. § 1057(b) ............................................................................ 13

15 U.S.C. § 1116(d)(1)(a) ..................................................................... 9, 10

15 U.S.C. § 1117(a) ........................................................................... 17

17 U.S.C. § 410(c) ............................................................................................... 14

17 U.S.C. § 501(a) ............................................................................................... 14

17 U.S.C. § 503(a) ............................................................................................... 20

CPLR § 6201 ....................................................................................................... 19

CPLR § 6211(a) ................................................................................................... 19

Fed. R. Civ. P. 26(d)(1) ...................................................................................... 24

Fed. R. Civ. P. 4 ....................................................................................... 8, 22, 23

Fed. R. Civ. P. 65(b) ............................................................................................. 9

N.Y. C.P.L.R. § 302 .............................................................................................. 3

**Other Authorities**

The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents
in Civil and Commercial Matters, November 15, 1965, Article ....................... 23

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Allstar** | Allstar Marketing Group, LLC |
| **Defendants** | BackforthTradeltd, blackpowerelectric, Bluesinternational, BYFRI, COMB6RO7G, friendtalk, Gao Li Store, gdfkgtuy, girls & boys, HawkyTrade, Higashiume, higherfly, Hopenhagen, HP1ZJMFPD, hyqwa789, JMT34J694, kmi123, KOZEYSDOTCOM, lisexhqdk, Marinelife, mcsoabereqxvn, MEI11, OGTQ0Q0AE, p99utianzhijia@163.com, Perseverancecoltd, Piapple, Pneumatic tools, positivestyle, q2q2w5, qilustore, satothrkcgb, seyfyleethesrmc, slalleawcavok, smeightvigbh, SNZDIDE3A, teaushysmsbbj, theetalnwys, Think Best, thodoastfbqgq, tithysvjid, Unbeatablesale.com, wangjuanjuang, whouledvpvfk, WR1YJC1EB, WZ1NYEP51, XANJ6P8HW, XinTang shop, y laqdwqd, Youdi-store, Yunxiangyishang, Z10RKETX9, zhangwei1986 and zhaoyinghai33 |
| **Wish** | Wish.com, a San Francisco, California-based, online marketplace and e-commerce platform owned by ContextLogic, Inc., a Delaware corporation ("ContextLogic"), that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint filed on October 29, 2020 |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on October 29, 2020 |
| **De Marco Dec.** | Declaration of Jennifer De Marco in Support of Plaintiff's Application |
| **Yamali Dec.** | Declaration of Danielle S. Yamali in Support of |

|  | Plaintiff's Application |
|---|---|
| **Baseboard Buddy Mark** | U.S. Trademark Registration No. 4,016,645 for "BASEBOARD BUDDY" for hand-held baseboard cleaning implements, namely, a manually-operated handled implement, namely, a cleaning pad formed with a baseboard cleaning head in Class 21 |
| **Baseboard Buddy Works** | U.S. Copyright Reg. Nos.: PA 2-058-097 covering the Baseboard Buddy Commercial, VA 2-071-475 covering the Baseboard Buddy Instruction Manual, VA 2-070-567 covering the Baseboard Buddy Packaging and VA 2-071-468 covering the Baseboard Buddy Website |
| **Baseboard Buddy Product** | A multi-use cleaning duster that uses both a shape-adjusting head and Swivel technologies to clean at every angle and design |
| **Counterfeit Products** | Products bearing or used in connection with the Baseboard Buddy Mark and/or Baseboard Buddy Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baseboard Buddy Mark and/or Baseboard Buddy Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baseboard Buddy Mark and/or Baseboard Buddy Works and/or products that are identical or confusingly or substantially similar to the Baseboard Buddy Product |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Wish, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |

| | |
|---|---|
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as ContextLogic, PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by ContextLogic, such as Wish, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

## I.   <u>INTRODUCTION</u>

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiff submits this memorandum of law in support of its *ex parte* Application in light of Defendants' intentional and willful offering for sale and/or sales of Counterfeit Products.[1]   Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiff requests that the Court grant its Application.

Wish is an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York. (Yamali Dec., ¶ 3). Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their respective User Accounts and Merchant Storefronts on the Third Party Service Providers. (De Marco Dec., ¶¶ 19-20; Yamali Dec., ¶¶ 18-19, Ex. A).  Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and market, distribute and ship such products to consumers throughout the world, including New York.  (De Marco Dec., ¶ 19; Yamali Dec., ¶ 25, Ex. A).  Third-party merchants, like Defendants, often use evasive tactics like aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection.  (Yamali Dec., ¶¶ 13-14).  In fact, Defendants' User Accounts and Merchant Storefronts are either devoid of any or contain incomplete information regarding Defendants' true

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.
[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also*, *e.g.*, *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018); *Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF), Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015); *AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012).

identities, locations and contact information, making it virtually impossible for Plaintiff to obtain independently.  (Yamali Dec., ¶¶ 27-28).

Without Plaintiff's authorization or consent, Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to consumers located in the U.S., including New York, through their Merchant Storefronts. (De Marco Dec., ¶¶ 19-21; Yamali Dec., ¶¶ 3, 18-19, Ex. A).  Defendants' aforementioned actions have caused and will continue to cause irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that Defendants' inferior and potentially dangerous Counterfeit Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiff, when, in fact, they are not. (De Marco Dec., ¶ 25).

Plaintiff's request for *ex parte* relief is particularly necessary because if Defendants receive notice of this Lawsuit, it is highly likely that they will transfer, conceal and/or destroy 1) the Counterfeit Products, 2) the means of making or obtaining such Counterfeit Products, 3) business records and 4) any and all other evidence relating to their infringing activities. (Yamali Dec., ¶ 13).  Moreover, they will likely hide or dispose of Defendants' Assets. *Id.*  In light of the foregoing, and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiff respectfully requests that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II.    STATEMENT OF RELEVANT FACTS

The facts are contained in the factual declarations of Jennifer De Marco and the attorney summarizing declaration of Danielle S. Yamali, plus accompanying exhibits.  *See* De Marco Dec.;

2

Yamali Dec.; Complaint, Exs. A-D.  In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

### III.    ARGUMENT

### A.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry.  First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).  Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution.  *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).[4]  Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1.  Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-

---

[3] Although Plaintiff acknowledges that it seeks multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge in the Southern District of New York, Plaintiff respectfully submits this memorandum of law in support of its Application.  Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

[4] Plaintiff respectfully submits that Defendants are also subject to jurisdiction under § 302(a)(3).  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  However, this alternative analysis is omitted for brevity.  Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted).  The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted).  Rather, it is sufficient that "the latter is not completely unmoored from the former."  *Id*.

In determining whether a party has "transacted business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.*  Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world to communicate with Defendants and view and purchase products, including Counterfeit Products, as demonstrated by the checkout pages completed by Epstein Drangel and Epstein Drangel's

purchase of Counterfeit Products. (Yamali Dec., ¶¶ 18-19, 25-26, Ex. A); *see also Chloe*, 616 F.3d at 170.

Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7-8 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012).    In *Lifeguard Licensing Corp.*, Judge Schofield held that a "website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." 2016 U.S. Dist. LEXIS at *7 (citing *Chloe*, 616 F.3d at 170 and *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 at *3 (S.D.N.Y. May 1, 2016) (holding that interactive commercial websites provides support for jurisdiction pursuant to CPLR § 302(a)(1))). Moreover, "[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Id*. at *8.  If a defendant

> wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [that defendant] to personal jurisdiction here.  If [a defendant] does not want its website to subject it to personal jurisdiction here, it is free to set up a passive website that does not enable [that defendant] to transact business in New York.

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).[5]

---

[5] This Court has repeatedly found personal jurisdiction over defendants based in China who are operating Merchant Storefronts on online marketplace platforms, such as Alibaba, AliExpress, Wish and eBay. *See, e.g.*, *Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Learns*

Further, in *EnviroCare Techs.*, the court held "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction."  2012 U.S. Dist. LEXIS 78088 at *9 (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant."))  Similarly, in *Chloe,* the Second Circuit held while the single act of shipping a counterfeit product might be sufficient to subject him to jurisdiction in a New York court, it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [infringing products] for sale to New York consumers."  *Chloe*, 616 F.3d 158, 170.

In some circumstances, courts in the Second Circuit have found that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3." *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009).  In *McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), this Court found personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online.  *McGraw-Hill* cited to *Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 at *3 (S.D.N.Y. Jul. 26, 2012).  In fact, whether a defendant physically shipped Counterfeit Products into New York at all is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state under § 302(a)(1). *Rolex*

---

*babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019); *Spin Master Ltd., et al v. Alvy, et al.*, No. 19-cv-3452-LGS (S.D.N.Y. Apr. 24, 2019); *Allstar Marketing Group, LLC v. 178623, et al.*, 19-cv-3186-AJN (S.D.N.Y. Apr. 10, 2019); *Allstar Marketing Group, LLC v. 123 Beads Store, et al.*, 19-cv-3184-AJN (S.D.N.Y. Apr. 10, 2019); *Allstar Marketing Group, LLC v. bigbigdream320, et al.*, 19-cv-3182-AJN (S.D.N.Y. Apr. 10, 2019); *Off-White LLC v. Amazon001, et al.*, No. 19-cv-2067-JMF (S.D.N.Y. Mar. 7, 2019).

*Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011).

Here, Defendants operate interactive Merchant Storefronts on Wish, allowing New York consumers to inquire and communicate with Defendants, purchase goods, including Counterfeit Products, by and through Defendants' listings, and upon completion of a sale, ship goods to New York. Defendants' choice in opening their respective User Accounts for the purpose of selling Counterfeit Products through their Merchant Storefronts alone supports a finding that Defendants have intentionally used Wish "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). Moreover, because Defendants are offering Counterfeit Products at significantly below-market prices and most of their User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S., this confirms that Defendants are sophisticated sellers operating commercial businesses through Wish, such that they are subject to jurisdiction. *Id*. at *10.

Recently, in a matter involving copyright and trademark infringement by similarly situated defendants, on defendants' motion to dismiss for lack of personal jurisdiction, Judge Preska ruled:

> the Court would have no trouble concluding that it possesses personal jurisdiction over the Wang Defendants on the merits. Here, the work of Plaintiff's investigator confirms that the Wang Defendants offered counterfeit goods for sale in New York and provided shipping to New York…a fact that the Court of Appeals has noted is "sufficient," even in the absence of any resulting sales, to provide for personal jurisdiction over the alleged infringer under N.Y. CPLR Section 302(a)…

*Mattel, Inc. v. Animefunstore, et al.*, 18-cv-8824 (LAP) at p. 10, n. 7 (S.D.N.Y. May 1, 2020) (citing *Cartier*, 598 F. Supp. 2d 422, 425; *Audiovox Corp.*, No. 11 Civ. 5142).

Nevertheless, Plaintiff's counsel has followed the same procedure as it did in *Mattel,* namely: Plaintiff's counsel has viewed Defendants' Counterfeit Products via their online User Accounts and Merchant Storefronts; (De Marco Dec., ¶ 19; Yamali Dec., ¶ 18); Epstein Drangel

then completed checkout pages for Counterfeit Products by providing the New York Address as the shipping address (Yamali Dec., ¶¶ 18, 25-26, Ex. A); and finally, Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants into New York all in U.S. dollars. (Yamali Dec. ¶¶ 25-26, Ex. A).  Thus, Defendants' sophisticated commercial operations, specifically including their offering for sale and/or selling of Counterfeit Products through their highly interactive User Accounts and Merchant Storefronts on Wish, Epstein Drangel's completion of checkout pages with the New York Address, purchase of Counterfeit Products, along with Defendants' own representations on their Merchant Storefronts that they ship Counterfeit Products to the U.S., including New York, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in New York. (Yamali Dec., ¶ 25, Ex. A).[6]

## 2. Exercising Personal Jurisdiction Over Defendants Comports with Due Process

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).  Defendants intentionally directed activity towards the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S.

---

[6] To the extent the court determines Defendants are not subject to jurisdiction under § 302(a)(1),  Plaintiff respectfully submits that there is jurisdiction pursuant to F.R.C.P. 4(k)(2), which provides jurisdiction "over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005); *See also Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*, 16-CV-5583 (JGK) (RWL), 2018 U.S. Dist. LEXIS 115659, at *26-28 (S.D.N.Y. July 10, 2018) (where the CPLR did not provide personal jurisdiction, this Court looked to Rule 4(k)(2), which was "implemented as a 'narrow extension' of federal jurisdiction to 'fill a gap' where federal law is at issue but a non-U.S. resident has insufficient contacts with any one state." (internal citations omitted)).

1985).  *See Best Van Lines, Inc.*, 490 F.3d at 243. (Yamali Dec., ¶¶ 25-26, Ex. A).  Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008).  Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.[7]

## B. PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b). Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[8]  Likewise, the Copyright Act authorizes courts to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a); *see also Cisco Tech, Inc. v. Certification Trendz Ltd*., 2015 U.S. Dist. LEXIS 83127, at *3 (D. Conn. June 26, 2015).

---

[7] Similarly, pursuant to Rule 4(k)(2), in addition to establishing minimum contact, exercising personal jurisdiction over Defendants must also be reasonable.  "Reduced to its essence, the 'reasonableness' of exercising jurisdiction depends on whether doing so would comport with 'fair play and substantial justice.'"  *Gucci Am., Inc.,* 135 F. Supp. 3d at 96-97 (quoting *Burger King Corp.,* 471 U.S. at 476).

[8] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions.  *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).

In seeking a temporary restraining order under Rule 65,[9] the moving party has the burden of demonstrating "(1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).   Similarly,  once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the plaintiff will provide adequate security; (ii) any order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the plaintiff has not publicized the requested *ex parte* order; (iv) the plaintiff is likely to succeed on showing that defendants are using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the plaintiff in denying the application outweighs the harm to defendants in granting the order and (viii) if prior notice was given, defendants would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B).  As discussed below, Plaintiff meets each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the both Rule 65(b) and the Lanham Act.[10]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities.

---

[9] "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

[10] Plaintiff has expressed its willingness to provide security in conjunction with the *ex parte* relief it seeks.  *See* [Proposed] Order, filed herewith.  Plaintiff has certified that it has not publicized this Application. (De Marco Dec., ¶ 27). Also, since Defendants' location and the location of the Counterfeit Products are unclear, Plaintiff is not requesting a seizure order in this Application. (Yamali Dec., ¶¶ 13-15, 27-28).

(Yamali Dec., ¶¶ 13-15, 27-28).  Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offer for sale and/or sell Counterfeit Products through their User Accounts and on their Merchant Storefronts on Wish. (De Marco Dec., ¶¶ 19-21; Yamali Dec., ¶¶ 3, 18-19).  The covert nature of Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility.  The immediate and irreparable harm to Plaintiff's business and reputation, as well as to the goodwill associated with the Baseboard Buddy Works and Baseboard Buddy Mark, in denying its Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Counterfeit Products. (De Marco Dec., ¶ 25).

     1. **Plaintiff Will Suffer Irreparable Harm in the Absence of an Injunction Leaving Plaintiff with No Adequate Remedy at Law**

Defendants' infringing activities must be stopped immediately to prevent any further harm to Plaintiff.  Not only does Plaintiff stand to suffer lost profits as a result of Defendants' competing, substandard Counterfeit Products, Defendants' illicit activities destroy the inherent value of the Baseboard Buddy Mark and Baseboard Buddy Works, impair Plaintiff's reputation, dilute Plaintiff's brands and goodwill and negatively affect Plaintiff's relationships with its current customers as well as its ability to attract new customers. (De Marco Dec., ¶ 25).  While courts may no longer presume irreparable harm upon a finding of infringement, "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F.Supp.2d 515, 540 (S.D.N.Y. 2011).  Further, a plaintiff may still demonstrate that "on the facts of the case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting*, 607 F.3d

68, 82 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)).

This Circuit recognizes that irreparable harm sufficient to warrant a preliminary injunction exists where a defendant injected counterfeit versions of a plaintiff's products into the market. *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011). Here, Defendants have sold substandard Counterfeit Products that look remarkably similar, if not identical, to the Baseboard Buddy Product and which embody, bear and/or incorporate the Baseboard Buddy Works and/or Baseboard Buddy Mark and/or identical or confusingly marks and/or substantially similar marks and/or works, thereby resulting in lost sales and impairing Plaintiff's "reputation that it has achieved through the expenditure of considerable time and effort." *Mitchell Grp. USA LLC v. Udeh*, No. 14-cv-5745, 2015 U.S. Dist. LEXIS 18801 at *8 (E.D.N.Y. Feb. 17, 2015) (quoting *N. Atl. Operating Co. v. Evergreen Distribs., LLC*, No. 13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 147835, at *37 (E.D.N.Y. Sep. 27, 2013)). (De Marco Dec., ¶¶ 22-25; Yamali Dec., ¶¶ 19-20, Ex. B).

Moreover, Defendants' counterfeiting and infringing activities deny Plaintiff of its fundamental right to control the quality of the goods sold under the Baseboard Buddy Works and/or Baseboard Buddy Mark. *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009). Defendants are offering their substandard Counterfeit Products in wholesale quantities and at significantly below-market prices with which Plaintiff cannot compete given the high-quality materials and construction necessary to manufacture the Baseboard Buddy Product. (De Marco Dec., ¶¶ 22-23; Yamali Dec., ¶¶ 25-26); *see also Zino Davidoff SA*, 71 F.3d 244.

Also, because Defendants' substandard Counterfeit Products are virtually indistinguishable from the Baseboard Buddy Product, not only could any injury to consumers that results from use of Defendants' substandard Counterfeit Products be attributed to Plaintiff, thereby causing

irreparable harm to Plaintiff in the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers, but Plaintiff would also potentially be exposed to legal liability for any such injury to consumers. (De Marco Dec., ¶¶ 22-25; Yamali Dec., ¶¶ 19-20, Ex. B).  Thus, this factor weighs heavily in Plaintiff's favor.

### 2. **Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims**

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

First, the U.S. Trademark Registration certificate submitted in conjunction with this Application provides *prima facie* evidence of the validity of the Baseboard Buddy Mark. 15 U.S.C. § 1057(b). (De Marco Dec., ¶ 7, Ex. A).

Second, a proper likelihood of confusion inquiry generally involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961).  Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted). Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id*. at 383 (internal citations omitted).  Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

**3.   Plaintiff is Likely to Prevail on Its Copyright Act Claims**

Under 17 U.S.C. § 501(a), in order to show likelihood of success on the merits of a copyright infringement claim, a given plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991)).  As detailed below, Defendants have infringed upon the Baseboard Buddy Works.

### a)  *Plaintiff owns Valid Copyrights in the Baseboard Buddy Works*

With respect to ownership, "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813, at *6 (S.D.N.Y. May 9, 2011); *see also* 17 U.S.C. § 410(c). Thus, Plaintiff's certificates of registration for the Baseboard Buddy Works are *prima facie* evidence of the validity of the copyrights and the facts stated in such registrations.  (De Marco Dec., ¶ 9, Ex. B).

### b)  *Defendants Infringed the Baseboard Buddy Works*

To establish infringement, "the copyright owner must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible [sic] elements of plaintiff's [work]." *Yurman Design, Inc. v. PAJ Inc.,* 262 F.3d 101, 110 (2d Cir. 2001).

A plaintiff may demonstrate actual copying "either by direct or indirect evidence." *P&G v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) (internal citations omitted).  "Indirect copying may be shown by demonstrating that the defendant had access to the copyrighted work and that the similarities between the works are probative of copying." *Id*.

A representative sample of side-by-side comparisons of Plaintiff's Baseboard Buddy Works to Defendants' Counterfeit Products and/or Defendants' Infringing Listings illustrates that

Defendants are copying one or more of the Baseboard Buddy Works by reproducing and/or displaying substantially similar, if not identical, imitations of the Baseboard Buddy Works either embodied in the Counterfeit Products themselves and/or in connection with the offering for sale and/or sale of Counterfeit Products.  (De Marco Dec., ¶¶ 20-21; and Yamali Dec., ¶¶ 19-20, Ex. B).  Defendants have taken the original and well-known elements of the Baseboard Buddy Works and used the same and/or elements thereof in Defendants' Infringing Listings for their Counterfeit Products.  (Yamali Dec., ¶¶ 18-20, Exs. A, B).   Defendants' imitations of the Baseboard Buddy Works are virtually indistinguishable therefrom, which, coupled with Plaintiff's significant and widespread advertising efforts, show that Defendants unquestionably had "access" to the Baseboard Buddy Works.  *See id.*; *Mint, Inc.*, 2011 U.S. Dist. LEXIS 49813, at *7; and *Stora v. Don't Ask Why Outfitters,* 2016 U.S. Dist. LEXIS 170172, at *12 (E.D.N.Y. Dec. 7, 2016). Plaintiff has demonstrated, at a minimum, "evidence of a reasonable possibility of access" through its widespread use of its Baseboard Buddy Works as well as the extensive advertising and widespread distribution of the Baseboard Buddy Product. *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).  This demonstrates that Plaintiff's assertion of Defendants' access to the Baseboard Buddy Works is more than mere speculation.

Further, Defendants' infringing use of the Baseboard Buddy Works is clearly more than *de minimis*.  Defendants have taken entire and/or core elements of the Baseboard Buddy Works and have used these, or nearly identical replicas thereof, in connection with the advertising, marketing, distributing, offering for sale and/or sale of the infringing products.  In many instances, Defendants have directly copied one or more of the individual components of the Baseboard Buddy Works and have used such elements together in Defendants' Infringing Listings.  (Yamali Dec., ¶¶ 18-20, Exs. A, B).  Thus, Plaintiff has established substantial similarity between the Baseboard Buddy

Works and Defendants' imitations, and that Defendants copied the same.  *See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003). Accordingly, Plaintiff respectfully submits that it is likely to succeed on the merits of its copyright claims.

4.  **Plaintiff is Likely to Prevail on Its State Law Claims**

Because Plaintiff has shown a likelihood of success on its Lanham Act claims, Plaintiff has also shown a likelihood of success on its unfair competition and unjust enrichment claims under New York State law. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

5.  **The Balance of Hardships Favors Plaintiff**

The balance of hardships unquestionably and overwhelmingly favors Plaintiff.  Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the Baseboard Buddy Works and Baseboard Buddy Mark and to its reputation as a result of Defendants' willful and knowing sales of substandard imitations of the Baseboard Buddy Product. (De Marco Dec., ¶ 25).  Any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities.  "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

6.  **Enjoining Defendants from Using the Baseboard Buddy Works and Baseboard Buddy Mark Will Serve the Public Interest**

The public interest will be served by the issuance of a temporary restraining order and preliminary injunction, as "the public has an interest in not being deceived—in being assured that

16

the mark it associates with a product is not attached to goods of unknown origin and quality."

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

Here, the public has an interest in being able to rely on the high quality of the Baseboard Buddy

Product bearing and/or sold in connection with the Baseboard Buddy Works and/or Baseboard

Buddy Mark. (De Marco Dec., ¶ 22; Yamali Dec., ¶¶ 18-19, Ex. A).  Since Defendants have

willfully and knowingly inserted substandard Counterfeit Products into the marketplace, the public

would benefit from a temporary restraining order and preliminary injunction halting any further

sale and distribution of Defendants' Counterfeit Products. (Yamali Dec., ¶¶ 18-19, 22-23, Ex. A).

## C.  PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS

### 1.  Defendants' Assets Must be Frozen

Considering the nature of Defendants' counterfeiting businesses, and Plaintiff's showing

that it has a high likelihood of succeeding on the merits of all of its claims, Plaintiff will be entitled

to an equitable accounting of Defendants' profits from their sales of Counterfeit Products.

Plaintiff's request for an asset freeze order granting Plaintiff information regarding the location of

Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer

from or to Defendants' Financial Accounts by the Financial Institutions and Third Party Service

Providers is both necessary and appropriate, and is within this Court's discretion to preserve

Plaintiff's right to the relief sought in the Complaint.  *See* 15 U.S.C. § 1117(a).[11]

District courts have "authority to freeze those assets which could [be] used to satisfy an

equitable award of profits."  *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist.

LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted).  In doing so, a court

---

[11] *See also*, *e.g.*, *Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

"may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11.  The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits aren't from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages.  *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132 (2d Cir. 2014) (A copyright and/or trademark "infringer is required in equity to account for and yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation.").  Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers solely via the Internet, and accepting payment for such Counterfeit Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. (De Marco Dec., ¶ 25); *see also Dama*

*S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[12]   Therefore, Plaintiff respectfully submits that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendants' Financial Accounts for the purpose of preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[13]

Similarly, with respect to Plaintiff's copyright infringement claims, CPLR § 6201 provides for attachment "where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment." CPLR § 6211(a) provides that an "order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment."[14]

## 2. **Defendants' User Accounts and Merchant Storefronts Must be Frozen**

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Counterfeit Products by Defendants on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiff. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

17 U.S.C. § 502(a) of the Copyright Act authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."   The decision whether to grant or deny injunctive relief "rests within the equitable discretion of the district courts," which "must be exercised consistent with traditional principles of

---

[12] *See also supra* fn. 2.
[13] Upon the entering of an asset freeze, Plaintiff also requests that the Court Order Defendants and/or the Financial Institutions and/or the Third Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.
[14] Plaintiff is prepared to provide supplemental briefing on its entitlement to attachment pursuant to CPLR § 6021 should the Court request it.

equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).  Similarly, 17 U.S.C. § 503(a) of the Copyright Act authorizes a court to order seizure and impoundment of "all copies. . .claimed to have been made or used in violation of the copyright owner's exclusive rights" and devices by means of which such copies may be reproduced.*U2 Home Entm't, Inc. v. Bowery Music City, Inc.*, 03-CV-8909 (RJH), 2003 U.S. Dist. LEXIS 21992, *1-*2 (S.D.N.Y. Dec. 8, 2003).

In requesting a seizure and impoundment, "Plaintiff need not show that a particular Defendant would not adhere to a TRO but rather only that someone like the Defendant would be likely to hide or destroy the evidence of his infringing activity." *Century Home Entm't, Inc. v. Laser Beat, Inc.,* 859 F. Supp. 636,  638-39 (E.D.N.Y. 1994).  "Where plaintiffs can demonstrate that a danger exists of destroying or transferring infringing goods, courts in this Circuit have not hesitated to grant *ex parte* orders under the Copyright Act." *Nova Prods., Inc. v. KISMA Video, Inc.*, 2002 U.S. Dist. LEXIS 27056, *4 (S.D.N.Y. July 15, 2002); *see* also, *Century Home Entm't, Inc.*, 859 F. Supp. at 638; *see also Cisco Tech., Inc*, 2015 U.S. Dist. LEXIS 83125, at *4-5 ("It is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant *ex parte* orders of seizure.").

Here, Plaintiff has demonstrated that Defendants, who, upon information and belief are located in China and operate their businesses exclusively over the Internet, are knowingly and willfully offering for sale and selling Counterfeit Products, which are virtually indistinguishable from Plaintiff's Baseboard Buddy Mark, Baseboard Buddy Works and/or Baseboard Buddy Products through their Merchant Storefronts on Wish. Sellers operating Merchant Storefronts on Wish, like Defendants, often use evasive tactics such as aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection, especially

20

because Wish does not require merchants to display their registered business name or any personal information. (Yamali Dec., ¶ 14).

Here, the only reasonable and feasible means to "seize" the Counterfeit Products and Infringing Listings, as authorized by Fed. R. Civ. P. 65 and the Copyright Act, is to restrain Defendants' User Accounts and Merchant Storefronts.  Freezing Defendants' User Accounts and Merchant Storefronts is the only reasonable means to prevent Defendants from posting additional listings for Infringing Products on their Merchant Storefronts.  Plaintiff's requested restraint is necessary to prevent Defendants from causing further irreparable harm to Plaintiff and to unassuming consumers who will continue to believe that Defendants' inferior and potentially dangerous Counterfeit Products are authentic Baseboard Buddy Products. (De Marco Dec. ¶ 23). If Defendants are permitted to continue to operate their Merchant Storefronts unrestrained, this would be the equivalent of granting a seizure order to confiscate infringing goods from a brick and mortar retailers and permitting those infringing goods to remain at the retail store.  Moreover, if no Merchant Storefront restraint is in place, there would be nothing preventing Defendants from re-posting Infringing Products on Wish.

Accordingly, since Plaintiff established a likelihood of success on the merits of both its copyright and trademark infringement claims,[15] a temporary restraining order is reasonable, warranted and necessary because of Defendants' continued offering for sale and/or sale of Counterfeit Products on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiff.

---

[15] "Impoundment pursuant to 17 U.S.C. § 503 is appropriate when a plaintiff establishes a prima facie case of copyright infringement." *Cisco Tech.,* 2015 U.S. Dist. LEXIS 83125, at *5 (citing *U2 Home Entertainment, Inc.*, 2003 U.S. Dist. LEXIS 21992 at *1).

### D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS

Fed. R. Civ. P. (4) governs service on Defendants in the instant matter since, upon information and belief, they are located in China.  While Defendants operate sophisticated commercial businesses, they are limited to correspondence by email, messaging through their respective User Accounts and communications otherwise transmitted over the Internet. (Yamali Dec., ¶¶ 13-15).  Plaintiff therefore respectfully requests that this Court issue an order granting it permission to serve each respective Defendant via the following combination of electronic methods: 1) registered electronic mail and 2) website publication.

Plaintiff may serve international defendants pursuant to Fed. R. Civ. P. 4(f)(3), which enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015).  Since third-party merchants on Wish, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there are, in fact, only partial, incomplete or no physical addresses whatsoever associated with the majority of Defendants' User Accounts, this is exactly the circumstance where the courts should exercise, as they previously have,[16] the authority to grant alternative methods of service. *Id*. "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the

---

[16] *See Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *6-7; *AW Licensing, LLC*, 2015 U.S. Dist. LEXIS 177101, at *18-19; *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *20 (S.D.N.Y. Mar. 7, 2013).

sound discretion of the district court." *Id*. [17]

In the instant matter, Plaintiff proposes using Outlook.com as well as Rmail (www.rmail.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. (Yamali Dec., ¶ 29).  Along with service via email, Plaintiff respectfully requests that the Court, in its discretion, permit service via website publication.[18]

Ultimately, service on Defendants by various electronic means comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 309 (1950).  None of the Defendants have disclosed their mailing addresses. (Yamali Dec., ¶¶ 13-15, 27-28).  Due to Defendants' purposeful anonymity, service by email, with confirmation of delivery by Rmail, and website publication is most likely to provide Defendants with proper notice of this action and Plaintiff's claims. *Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *7.  Therefore, Plaintiff respectfully submits that an order authorizing alternative service benefits all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action to move forward expeditiously.[19]

---

[17] Pursuant to Fed. R. Civ. P (4)(1), service may be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague Convention").  Although China is a signatory to it, the Hauge Convention "shall not apply where the address of the person to be served with the document is not known." *See* Hague Convention, November 15, 1965, Article 1.  Moreover, despite China's objection to service by postal channels under Article 10, this Court has held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement.  *Sulzer Mixpac AG*, 312 F.R.D. at 332.

[18] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

[19] Plaintiff also respectfully submits that the Court issue an order authorizing Plaintiff to serve the Financial Institutions and/or Third Party Service Providers with notice of the Court's order of the Application via electronic means prior to serving Defendants and with enough time for the Financial Institutions and/or Third Party Service Providers to comply with the Court's order to help expedite the process.

## E. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and extent of Defendants' counterfeiting and infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all User Accounts and any and all Merchant Storefronts, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1).  In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[20] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted).  Regardless of which test, Plaintiff has established that it is entitled to the expedited discovery requested for good cause shown.  *See id.* at 327; (De Marco Dec., ¶ 25; Yamali Dec., ¶¶ 13-15, 27-28).

## F. PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).  Plaintiff respectfully submits the provision of security in the amount of $5,000 is sufficient.  *Rovio*

---

[20]*See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

*Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[21]

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted *ex parte* in its entirety.


Dated:  October 29, 2020                                    Respectfully submitted,

                                                            EPSTEIN DRANGEL LLP

                                                            BY:   *Danielle Yamali*
                                                                  Danielle S. Yamali (DY 4228)
                                                                  dfutterman@ipcounselors.com
                                                                  Jason M. Drangel (JD 7204)
                                                                  jdrangel@ipcounselors.com
                                                                  Ashly E. Sands (AS 7715)
                                                                  asands@ipcounselors.com
                                                                  Brieanne Scully (BS 3711)
                                                                  bscully@ipcounselors.com
                                                                  EPSTEIN DRANGEL LLP
                                                                  60 East 42nd Street, Suite 2520
                                                                  New York, NY 10165
                                                                  Telephone:    (212) 292-5390
                                                                  Facsimile:     (212) 292-5391
                                                                  *Attorneys for Plaintiff*
                                                                  *Allstar Marketing Group, LLC*

---

[21] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances.  *See Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")